Swan, J.
A district court judge, after a jury-waived trial, ordered a judgment to enter in the amount of $50,000.00 against the defendant, Maureen A. Smith (“Smith”), in a suit brought against her by Doreen M. Williams ("Williams”) for breach of contract. Smith appeals from that judgment.
In November, 2005, according to evidence that the trial judge could have credited, Williams put her mobile home in Malden up for sale for $69,900.00, with plans to move with her daughter, who was undergoing chemotherapy, to live with her other daughter in Florida. The following spring, she met Smith, who indicated an interest in purchasing the home. After about a month of negotiations, they agreed on a purchase price of $60,000.00, with a $10,000.00 deposit. The balance was to be paid in full from the proceeds of the sale of Smith’s house in Everett, which was also on the market.[1] To this end, Smith took Williams to the Everett house and showed her the “for sale” sign. Smith told Williams that the house would be sold and the balance owed Williams would be paid within six months; had Smith not said that to her, there was, in Williams’ words, “no way” that Williams would have sold Smith the mobile home. Smith was aware that Williams was unemployed, was heavily in debt, and was trying to relocate to Florida. For her part, Williams agreed that the mobile home would be conveyed in “move in” condition. On May 20, 2006, Smith paid Williams the deposit of $10,000.00. Nothing was put into writing, and in Williams’ “mind the transaction was over.”
Two weeks later, Smith typed an agreement for the purchase of the mobile home and presented it to Williams for her signature and acknowledgment. Williams showed the agreement to her daughter, who was angry that it provided for payment of $300.00 per month but had no date for final payment of the balance. When Williams asked Smith about this, Smith said “that she couldn’t put a date on it because she didn’t know when her house was going to be sold.” Thinking “that makes sense,” Williams signed the agreement, later testifying, “Because I had no reason not to believe Maureen that she wasn’t going to pay me from the sale of her house.” Williams was unable to afford an attorney, and thus had none.
*70 The written agreement, signed and dated June 15, 2006 by Williams and Smith, was titled “Agreement to Sell Real Estate” and stated that the parties “hereby agree that the Seller shall sell and the Buyer shall buy the following described property UPON THE TERMS AND CONDITIONS HEREINAFTER SET FORTH within this contract.” There followed a description of the mobile home and its location, the purchase price of $60,000.00, the deposit of $10,000.00, the “Principal Balance Due” of $50,000.00, and:
(c) Other: Balance to be paid in monthly paymn’ts [sic] of ($300.00) Three Hundred US Dollars to Doreen Williams until the unpaid Principal Balance is satisfied.
The writing added, “There will be no penalty if the current unpaid balance is paid at any time to Doreen Williams, in full, by the buyer Maureen A. Smith to end this payment contract.” Finally, it provided that the mobile home was to be sold without recourse and to be available for occupancy by July 15, 2006, that Williams warranted good title to the mobile home, and that Smith was responsible for trailer park fees after July 15. The writing was silent as to a due date for payment of the balance, or payment from the proceeds of Smith’s house, or the mobile home being in “move in” condition. The agreement lacked an integration clause.
Smith sold her house at a loss. There were no proceeds. The balance was not paid to Williams.
Finding for Williams, the trial court accepted the oral agreements as part of the entire contract for the purchase and sale of the mobile home. In his written decision, the judge stated that the writing alone “contains obvious deficiencies,” that the “parties cannot have seriously contemplated that Ms. [Smith] would pay off the $50,000 balance at a rate of $300 per month without any interest on the balance owed,” that the writing had no integration clause, and that it did “not reflect the actual agreement of the parties,” including the understanding that “the outstanding balance would be paid when Ms. Smith sold the house she was living in at the time.”
Smith contends that the parol evidence rule precluded the court from considering the oral portion of the parties’ agreement. The evidence, however, supports the judge’s receipt of the oral agreements. Although the written document is captioned as an “Agreement to Sell Real Estate,” the contract was for the sale of a mobile home and thus a sale of goods covered by art. 2 of the Uniform Commercial Code. G.L.C. 106, §§2-101 et seq. Specifically, the Code provides that a “contract for the sale apart from the land of... things attached to realty and capable of severance without material harm thereto ... is a contract for the sale of goods.” G.L.c. 106, §2-107(2). The Code requires that
a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. ... A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing (emphasis added).
*71 G.L.c. 106, §2-201 (1). Omitted terms, if any, are addressed in the succeeding section, which deals specifically with parol evidence:
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
(a) by course of dealing or usage of trade (section 106, §1-205) or by course of performance (section 106, §2-208); and
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement (emphasis added).
G.L.c. 106, §2-202. This section, in the words of comment 1 to §2-202 of the Code, “definitely rejects [a]ny assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon.”
At common law, a writing intended to be complete and final and without ambiguity is not subject to parol evidence. See, e.g., Benford Mfg. Co. v. Standard Tire & Rubber Co., 235 Mass. 380, 382 (1920). If, however, the parties’ written contract is not "intended by them as a statement of their complete agreement,” parol evidence may be received. Welch v. Bombardieri, 252 Mass. 84, 87 (1925). Such an intent is usually expressed by an integration clause. See, e.g., Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 591 (2007). Parol evidence may also be admissible “when the language used is ambiguous by reason of unexpressed terms, and resort must be had to extrinsic evidence to determine the meaning and extent of the language employed by the contracting parties. Such evidence is admissible not to vary what is written, but to complete the instrument.” Welch, supra, quoting Hebb v. Welsh, 185 Mass. 335, 336 (1904).
By contrast, G.L.c. 106, §2-202 “does not place emphasis, under the parol evidence rule, on ambiguous language, as may be gleaned from the absence of the word ‘ambiguous’ in §2-202. That does not exclude consideration of ambiguous terms from the section, but does permit a more flexible approach to the enforcement of sales contracts by greater recognition of the commercial aspects of sales.” H. Lemelman, Manual on Uniform Commercial Code §2:21, at 64-65 (3d ed. 2002). And while its terms are not ambiguous ($300.00 per month until paid in full), the writing signed by Williams and Smith contained no integration clause, or other indication that it was “intended by them as a statement of their complete agreement.” Welch, supra. The statute allows a writing to be “explained or supplemented ... by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.” G.L.c. 106, §2-202 (b). The trial court did not so find; to the contrary, the judge found just the opposite — crediting the testimony of Williams, as he was in the best position to do, he found that the writing did “not reflect the actu *72 al agreement of the parties.”[2] The judge, thus, properly considered evidence of the oral “consistent additional terms” concerning a final payment date, or more accurately, a final payment time frame of six months. This evidence included the testimony of Williams that there was “no way” she would have sold the mobile home without the promise to pay the balance within that period.
Initially, it may appear that, by noting “the parties cannot have seriously contemplated that Ms. [Smith] would pay off the $50,000 balance at a rate of $300 per month without any interest on the balance owed,” the judge was injecting his own view of the transaction. That view finds justification, however, in the clause that there would be no prepayment penalty — a term that makes sense only if interest were imposed. See, e.g., Ferreira v. Yared, 32 Mass. App. Ct. 328 (1992). The judge’s observation does not undercut his ultimate finding that the parties’ written and oral agreements constituted the entire contract.
Unfortunately, neither party had counsel when it mattered most: during negotiations for and drafting of the contract. Neither can be truly satisfied by the resulting time and expense of litigation, when they did have attorneys. At this point, our function is to decide only whether there was error in the judge’s receipt of the parol evidence and ordering judgment for Williams. We find none.
Judgment affirmed.
So ordered.

 Citing the parol evidence rule, Smith objected to the admission of this testimony concerning payment of the balance. The testimony was taken de bene.

 ‘The determination as to whether a writing was intended as a complete and exclusive statement of an agreement is a function of the court.” Compania Sud-Americana de Vaporer, S.A. v. IBJ Schroder Bank & Trust Co., 785 F. Supp. 411, 432 (S.D.N.Y. 1992). It is arguable that in a jury trial, the judge rather than the jury would make this determination, but the authorities are in disagreement on this point. See 1 J.J. White & A.S. Summers, Uniform Commercial Code §2-9, at 164 (5th ed. 2006). Indeed, it has been observed that “[w]hile integration may be viewed as a question of law, it is more commonly characterized as a question of fact” (citations omitted). Northwest Cent. Pipeline Corp. v. JER Partnership, 943 F.2d 1219, 1225 (10th Cir. 1991). Resolution of a question of fact, in turn, requires, in the words of Instruction 2:06 of the Massachusetts District Court Civil Practice Jury Instructions (2004), a determination of “which witnesses to believe, and how much weight or importance to give their testimony”; credibility is a function for the jury. Lupia v. Marino, 353 Mass. 749 (1967). We need not reach the issue, however, since this case was tried without a jury, and the trial judge, in his findings, concluded that the writing was not intended as the complete, integrated contract, thus crediting Williams’ testimony.